UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT RAYA,<br><br>                              Plaintiff,<br><br>v.<br><br>CALBIOTECH,<br><br>                              Defendant. | Case No.:  18-cv-2643-WQH-BGS<br><br>**ORDER** |
| CALBIOTECH,<br><br>                              Counterclaimant,<br><br>v.<br><br>ROBERT RAYA,<br><br>                              Counterdefendant. | |

HAYES, Judge:

The matter before the Court is the Motion for Summary Judgment filed by Defendant/Counterclaimant Calbiotech, Inc. (ECF No. 36).

## I.     BACKGROUND

On November 19, 2018, Plaintiff Robert Raya, proceeding *pro se*, filed a Complaint against Defendant Calbiotech, Inc. ("Calbiotech"). (ECF No. 1). In the Complaint, Raya alleges that he is a former employee of Calbiotech and a beneficiary of its 401(k) profit sharing plan. Raya alleges that he made seven written requests to Calbiotech for a copy of the 401(k) summary plan description between July 16, 2016, and February 23, 2018. Raya alleges that Calbiotech provided "false or fraudulent" summary plan descriptions to Raya on December 14, 2016, and December 14, 2017. (*Id.* ¶¶ 10, 12). Raya alleges that

Calbiotech "failed or refused to provide a [s]ummary [p]lan [d]escription or a written plan description of any kind . . . until after [Raya's] [seventh] request," when Calbiotech provided Raya with "Calbiotech Inc. Volume Submitter Profit Sharing/401(k) Plan Adoption Agreement" on February 26, 2018. (*Id.* ¶ 9). Raya brings one claim against Calbiotech for failing to provide Raya with a summary plan description of Calbiotech's 401(k) profit sharing plan within thirty days of Raya's written request in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). Raya seeks statutory penalties of $110 per day for the period of January 26, 2016 to December 14, 2018.

On February 21, 2019, Calbiotech filed an Answer to the Complaint. (ECF No. 6). On May 21, 2019, Calbiotech filed a Counterclaim against Raya. (ECF No. 14). In the Counterclaim, Calbiotech alleges that on December 7, 2016, Raya and Calbiotech entered into a separation agreement. Calbiotech alleges that by signing the separation agreement, Raya released all known and unknown claims against Calbiotech arising from Calbiotech's actions before December 7, 2016. Calbiotech brings one claim against Raya for breach of the separation agreement. Calbiotech seeks dismissal of Raya's Complaint with prejudice, declaratory relief, an order requiring Raya to pay back $12,500 in severance pay that Raya received from Calbiotech, and attorneys' fees and costs.

On June 13, 2019, Raya filed a Motion to Dismiss Calbiotech's Counterclaim. (ECF No. 15). On August 15, 2019, the Court denied Raya's Motion to Dismiss. (ECF No. 17). On October 2, 2019, Raya filed an Answer to Calbiotech's Counterclaim. (ECF No. 26).

On February 11, 2019, Calbiotech filed a Motion for Summary Judgment. (ECF No. 36). Calbiotech moves for summary judgment in its favor on Raya's ERISA claim and Calbiotech's breach of contract claim. Raya did not file any opposition to the Motion for Summary Judgment.

## II.   FACTS

On June 2, 2008, Calbiotech hired Raya as a full-time scientist. Except for a brief separation from service in 2011, Raya was employed with Calbiotech until November 29, 2016, when he was terminated from his position as a production manager.

### A. Raya's Separation Agreement

Following Raya's termination, Raya and Calbiotech entered into a Separation Agreement and General Release (the "Separation Agreement"). The Vice President of Calbiotech, David Barka, executed the Separation Agreement on Calbiotech's behalf on November 30, 2016. Raya executed the Separation Agreement on December 7, 2016. The Separation Agreement provided, in relevant part:

2.   Payment to Employee.

a.   In exchange for the covenants and consideration herein, Company will pay to Employee **$12,500** (hereinafter "the Severance Payment") as full and complete settlement of any and all disputed claims or potential disputed claims that Employee may have against Company . . . .

3.   Release. Employee, on behalf of Employee and Employee's representatives, heirs, successors, and assigns, does hereby completely release and forever discharge Company, including its related or affiliated companies, partnerships, subsidiaries, and other business entities and its and their present and former respective officers, directors, shareholders, owners, agents, employees, representatives, insurers, attorneys, successors, and assigns (referred to collectively as the "Company"), from and against all claims, rights, demands, actions, obligations, liabilities, and causes of action, of any and every kind, nature, and character whatsoever, that Employee has now, has ever had, or may have in the future against Company, or any of them, based on any acts or omissions by Company, or any of them, as of the date of execution of this Agreement by Employee . . . (referred to collectively as the "Released Claims"), to the fullest extent allowed by law. The Released Claims do not include those that the law does not allow Employee to release. Notwithstanding the foregoing, Employee agrees to waive the right to recover monetary damages in any charge, complaint, or lawsuit filed by Employee or anyone else on Employee's behalf for any Released Claims.

4.   No Legal Action. Employee represents that Employee has not filed, initiated, or caused to be filed or initiated any legal action covering any Released Claim and agrees that Employee will never file, initiate, or cause to be filed or initiated, at any time after the execution of this Agreement, any claim, charge, suit, complaint, action, or cause of action, in any state or federal court or before any state or federal administrative agency, based in whole or

19-cv-1239-WQH-BGS

in part on any Released Claim. Further, Employee shall not participate, assist, or cooperate in any suit, action, or proceeding against or regarding the Released Parties, or any of them, unless compelled to do so by law.

5.    <u>Release Full and Final</u>. Employee understands and agrees that this is a full and final release covering all unknown and unanticipated injuries, debts, claims, or damages to Employee that may have arisen or may arise in connection with any act or omission by the Released Parties before the date of execution of this Agreement. For that reason, Employee hereby waives any and all rights or benefits that he may have under the terms of California Civil Code §1542 . . . .

. . .

7.    <u>Review Period</u>. I acknowledge that I was given 21 calendar days to consider this release. I waive my right that I might have to additional time beyond this consideration period. I have reviewed this release carefully and I fully understand what it means, and I am entering into it knowingly and voluntarily.

8.    <u>No Admission of Liability</u>. It is understood and agreed that this is a compromise settlement of doubtful and disputed claims, or potential disputed claims, and the furnishing of the consideration for this Agreement shall not be deemed or construed as an admission of liability or responsibility at any time for any purpose. It is further agreed and understood that this compromise and Agreement are being entered into solely for the purpose of avoiding further expense and inconvenience from defending against any or all of the Released Claims.

. . .

14.    <u>No Reliance; Consideration</u>. The undersigned parties each acknowledge that they have entered into this Agreement voluntarily, without coercion, and on the basis of their own judgment and not in reliance on any representation or promise made by the other party, other than those contained in this Agreement. This Agreement recites the sole consideration for the promises exchanged in this Agreement. Each party has read this Agreement and is fully aware of its contents and legal effect.

. . .

17.   <u>Rescission</u>. This Agreement must be signed and returned by **December 23, 2016** to commence your severance benefits. The severance payment will be issued to you as soon as administratively possible after the date you sign the Agreement. This Agreement may only be rescinded within 7 days after it is executed by hand-delivering a written notice of rescission to the President of Company.

(Ex. B, Declaration of David Barka in Support of Motion for Summary Judgment ("Barka Decl."), ECF No. 36-5 at 2-5 (emphases in original)). On December 8, 2016, Raya returned the executed Separation Agreement to Calbiotech, and Calbiotech remitted $12,500 to Raya.

## B. Calbiotech's 401(k) Profit Sharing Plan

Calbiotech "established, maintains, and is the plan sponsor and designated plan administrator of an ERISA-governed employee pension benefit plan—the Calbiotech Inc. 401(k) Profit Sharing Plan (the 'Plan')." (Barka Decl., ECF No. 36-3 ¶ 12). Calbiotech adopted the Plan on December 30, 2009. The Plan was retroactively effective as of September 1, 2008. Calbiotech prepared a Summary Plan Description ("SPD") for Plan participants after it adopted the Plan.

Calbiotech amended the Plan on April 26, 2012, retroactively effective on September 1, 2011. Calbiotech again amended the Plan on April 26, 2016, retroactively effective on January 1, 2015. After each amendment, "a new and updated [SPD] [ ] was subsequently prepared for Plan participants." (*Id.* ¶ 17). On July 26, 2016, Raya sent an email to Thereza Lopez, the Office Manager of Calbiotech, requesting "a copy of our 401k plan rules." (Ex. M, Barka Decl., ECF No. 36-16 at 2). On August 8, 2016, Raya sent a second email to Lopez, requesting "a copy of our 401k plan." (Ex. N, Barka Decl., ECF No. 36-17 at 2). On December 13, 2016, Raya sent an email to Dianna L. Simmons, the Vice President of Crown Benefits, Inc., requesting "the plan rules." (Ex. Q, Barka Decl., ECF No. 36-20 at 3). On December 14, 2016, Simmons provided Raya with Calbiotech's SDP for the April 26, 2016, Plan amendment.

Calbiotech again amended the Plan on April 3, 2017, retroactively effective on September 1, 2016. Calbiotech prepared an updated SPD after it amended the Plan. On February 6, 2018, Raya sent an email to David Barka, requesting "summary plan descriptions for both retirement plans as well as complete, whole plan documents for each of Calbiotech's retirement plans." (Ex. O, Barka Decl., ECF No. 36-18 at 2). On February 23, 2018, Raya sent an email to Thereza Lopez that stated:

> Thank you for the quick response and for providing the documents describing the Calbiotech Pension Plan. In my letter, I also asked for a copy of the complete plan document in addition to the summary plan description for each of Calbiotech's retirement plans, including the 401K plan. Can you or David please provide these as well?

(Ex. R, Barka Decl., ECF No. 36-21 at 3). On February 26, 2018, Lopez responded, "Attached is the plan document for the 401(k) plan." (*Id.* at 2). The document attached to Lopez's email was the Calbiotech Inc. Volume Submitter Profit Sharing/401(k) Plan Adoption Agreement, adopted on April 3, 2017.

## III.   LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). Where the party moving for summary judgment does not bear the burden of proof at trial, "the burden on the moving

party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542-43 (9th Cir. 1989) ("[O]n an issue where the plaintiff has the burden of proof, the defendant may move for summary judgment by pointing to the absence of facts to support the plaintiff's claim. The defendant is not required to produce evidence showing the absence of a genuine issue of material fact with respect to an issue where the plaintiff has the burden of proof. Nor does Rule 56(c) require that the moving party support its motion with affidavits or other similar materials negating the nonmoving party's claim." (citations omitted)).

If the moving party bears the burden of proof on an issue at trial, the moving party must "establish[ ] a prima facie case on their motion for summary judgement." *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994) (citing *Celotex Corp.*, 477 U.S. 317; *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. 574). The moving party must present evidence that, if uncontroverted, would entitle to moving party to prevail on that issue. *Id.*

If the moving party meets the initial burden, the burden shifts to the opposing party to show that summary judgment is not appropriate. *Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 322, 324. The nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586; *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient."). The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotations omitted). The nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 256.

A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition. *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95

& n. 4 (9th Cir. 1994). However, the court may grant an unopposed motion for summary judgment if the moving party's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact. *Id.*

## IV. RAYA'S ERISA CLAIM

Raya brings one claim under ERISA against Calbiotech for failure to provide Raya with SPDs that Raya requested in writing within thirty days of his requests on July 26, 2016, August 8, 2016, November 30, 2016, December 7, 2016, December 13, 2016, February 6, 2018, and February 23, 2018.

Calbiotech asserts that it is entitled to summary judgment in its favor on Raya's ERISA claim. Calbiotech contends that by signing the Separation Agreement, Raya waived his claims for Calbiotech's alleged failure to provide Raya with SPDs before December 7, 2016. Calbiotech contends that it provided Raya with copies of the latest Plan documents in compliance with 29 U.S.C. § 1024(b)(4) within thirty days of Raya's written requests after December 7, 2016.

Under ERISA, the administrator of an employee benefit plan is required to provide plan participants and beneficiaries with a summary plan description, annual reports, and pension benefit statements. 29 U.S.C. § 1021(a). 29 U.S.C. § 1024(b)(4) provides that the plan administrator "shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." Any plan administrator "who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary . . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to [$110] a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper . . . ." 29 U.S.C. § 1132(c)(1); *see* 29 C.F.R. § 2575.502c-1 (increasing maximum civil penalty from $100 per day to $110 per day).

### A. **Calbiotech's Failure to Provide Requested Plan Documents Due Before December 7, 2016**

Raya alleges that he made written requests to Calbiotech for Calbiotech's SPD on July 26, 2016, and August 8, 2016. Raya alleges that Calbiotech failed to provide the requested Plan documents within thirty days of Raya's written requests.

Calbiotech "is the plan sponsor and designated plan administrator of an ERISA-governed employee pension benefit plan—the Calbiotech, Inc. 401(k) Profit Sharing Plan [ ]." (Barka Decl., ECF No. 36-3 ¶ 12). On July 26, 2016, Raya sent an email to Thereza Lopez, the Office Manager of Calbiotech, requesting "a copy of our 401k plan rules." (Ex. M, Barka Decl., ECF No. 36-16 at 2). On August 8, 2016, Raya sent a second email to Lopez, requesting "a copy of our 401k plan." (Ex. N, Barka Decl., ECF No. 36-17 at 2).

On December 7, 2016, Raya executed the Separation Agreement between Raya and Calbiotech. By signing the Separation Agreement, Raya agreed to "completely release and forever discharge [Calbiotech] . . . from and against all claims, rights, demands, actions, obligations, liabilities, and causes of action . . . that [Raya] has now, has ever had, or may have in the future against [Calbiotech] . . . based on any acts or omissions by [Calbiotech] . . . as of the date of execution of this Agreement by [Raya] . . . (referred to collectively as the 'Released Claims') . . . ." (Ex. B, ECF No. 36-5 at 3). Raya "waive[d] the right to recover monetary damages in any charge, complaint, or lawsuit filed by [Raya] or anyone else on [Raya's] behalf for any Released Claims." (*Id.*). Raya "represent[ed] that [Raya] ha[d] not filed, initiated, or caused to be filed or initiated any legal action covering any Released Claim" and "agree[d] . . . [to] never file, initiate, or cause to be filed or initiated, at any time after the execution of this Agreement, any claim, charge, suit, complaint, action, or cause of action, in any state or federal court or before any state or federal administrative agency, based in whole or in part on any Released Claim." (*Id.*). Raya "underst[ood] and agree[d] that this is a full and final release covering all unknown and unanticipated injuries, debts, claims, or damages to [Raya] that may have arisen or may arise in connection with any act or omission by [Calbiotech] before the date of execution of this Agreement." (*Id.*).

"In exchange for the covenants and consideration [in the Separation Agreement]," Calbiotech agreed to pay Raya $12,500 "as full and complete settlement of any and all disputed claims or potential disputed claims that [Raya] may have against [Calbiotech]." (*Id.* at 2). Calbiotech remitted $12,500 to Raya on December 8, 2016. (Ex. D, Barka Decl., ECF No. 36-7 at 2).

Raya's ERISA claim for statutory penalties based on Calbiotech's failure to provide Raya with Plan documents within thirty days of his requests on July 26, 2016, and August 8, 2016, is "based on [ ] acts or omissions by [Calbiotech] . . . as of the date of execution of [the Separation Agreement] by [Raya] . . . ." (Ex. B, ECF No. 36-5 at 3). Raya released these claims by signing the Separation Agreement. The Court finds that Calbiotech has met its burden to demonstrate that there is an "absence of facts to support [Raya's] claim" for statutory penalties under ERISA arising from Raya's requests for Plan documents on July 26, 2016, and August 8, 2016. *United Steelworkers*, 865 F.2d at 1542 (citation omitted). The moving papers do not on their face reveal a genuine issue of material fact. *Cristobal*, 26 F.3d at 1494-95 & n. 4. The Court concludes that Calbiotech is entitled to summary judgment in its favor on Raya's ERISA claim for statutory penalties arising from Raya's requests for Plan documents on July 26, 2016, and August 8, 2016.

## B. Calbiotech's Alleged Failure to Provide Requested Plan Documents Due in December 2016 and January 2017

Raya alleges that he made written requests to Calbiotech for Calbiotech's SPD on November 30, 2016, December 7, 2016, and December 13, 2016. Raya alleges that on December 14, 2016, Calbiotech provided Raya with "a false or fraudulent document titled Calbiotech, Inc. 401(k) Profit Sharing Summary Plan Description." (ECF No. 1 ¶ 10). Raya alleges that the SPD provided by Calbiotech "failed to correctly identify the plan as a Safe Harbor plan and [ ] made no mention of the major identifying feature of the plan, which is a mandatory automatic employer match of elected deferrals, up to 4%," failing to meet the requirements of 29 C.F.R. § 2520.102-3. (*Id.*).

ERISA requires that a summary plan description include:

The name and type of administration of the plan; . . . the name and address of the person designated as agent for the service of legal process, if such person is not the administrator; the name and address of the administrator; names, titles and addresses of any trustee or trustees (if they are persons different from the administrator); a description of the relevant provisions of any applicable collective bargaining agreement; the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the source of financing of the plan and the identity of any organization through which benefits are provided; the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis; the procedures to be followed in presenting claims for benefits under the plan including the office at the Department of Labor through which participants and beneficiaries may seek assistance or information regarding their rights under this Act . . ., the remedies available under the plan for the redress of claims which are denied in whole or in part . . ., and if the employer so elects for purposes of complying with section 701(f)(3)(B)(i) [29 USC § 1181(f)(3)(B)(i)], the model notice applicable to the State in which the participants and beneficiaries reside.

29 U.S.C. § 1022(b); *see also* 29 C.F.R. § 2520.102-3.

On December 13, 2016, Raya sent an email to Dianna L. Simmons, the Vice President of Crown Benefits, Inc., requesting "the plan rules." (Ex. Q, Barka Decl., ECF No. 36-20 at 3). On December 14, 2016, Simmons provided Raya with the SPD for the amended Plan that Calbiotech adopted on April 26, 2016, and that was retroactively effective on January 1, 2015. (*Id.* at 2).

Calbiotech has come forward with evidence that it complied with ERISA by providing Raya with the "a copy of the latest updated summary plan description," within thirty days of Raya's request on December 13, 2016. 29 U.S.C. § 1024(b)(4). Raya has not identified any information that the SDP was required by ERISA to include and failed to include. Neither party has submitted evidence that Raya made any written request for Plan documents to Calbiotech on November 30, 2016, or December 7, 2016. However, taking Raya's allegation that he requested the SPD on November 30 and December 7 as true, Calbiotech has come forward with evidence that it provided Raya with the SDP within

thirty days of those requests, on December 14, 2016. The Court finds that Calbiotech has met its burden to demonstrate that there is an "absence of facts to support [Raya's] claim" for statutory penalties under ERISA arising from Raya's alleged requests for Plan documents on November 30, 2016, and December 7, 2016, and Raya's request for Plan documents on December 13, 2016. *United Steelworkers*, 865 F.2d at 1542 (citation omitted). The moving papers do not on their face reveal a genuine issue of material fact. *Cristobal*, 26 F.3d at 1494-95 & n. 4. The Court concludes that Calbiotech is entitled to summary judgment in its favor on Raya's ERISA claim for statutory penalties arising from Raya's alleged requests for Plan documents on November 30, 2016, and December 7, 2016, and Raya's request for Plan documents on December 13, 2016.

## C. Calbiotech's Alleged Failure to Provide Requested Plan Documents Due in 2018

Raya alleges that he made written requests to Calbiotech for Calbiotech's SPD on February 6, 2018, and February 23, 2018. Raya alleges that Calbiotech failed to provide the requested Plan documents within thirty days of Raya's written requests.

Courts in this circuit have adopted the holdings of the Courts of Appeals for the Second, Third, Sixth, Seventh, and Tenth Circuits that "claimants seeking documents pursuant to § 1024(b)(4) must 'provide clear notice to the plan administrator of the information they desire.'" *Cultrona v. Nationwide Life Ins. Co.*, 748 F.3d 698, 707 (6th Cir. 2014) (quoting *Kollman v. Hewitt Assocs., LLC*, 487 F.3d 139, 145 (3d Cir. 2007) (adopting the clear notice standard and collecting similar cases from the Second, Fifth, Seventh, and Tenth Circuits)); *see Williams v. Caterpillar, Inc.*, 944 F.2d 658, 667 (9th Cir. 1991) ("The district court found, however, that appellants had failed to offer any proof— or even to allege—that they had ever requested any plan descriptions from appellees. Some courts have suggested that where a pension plan participant fails to make a specific request for the information at issue, he has no litigable claim under section 502(c). In any event, even if appellants had proven that they requested a description from appellees, the district court had discretion under the statute to refuse their request for relief." (internal citations

12

omitted)), *amended* (Nov. 1, 1991); *see also Michael v. La Jolla Learning Inst., Inc.*, No.: 17-CV-934 JLS (MDD), 2019 U.S. Dist. LEXIS 169369, at *17 (S.D. Cal. Sept. 30, 2019) (adopting clear notice standard); *Draney v. Westco Chems., Inc.*, No. 2:19-cv-01405-ODW (AGRx), 2019 U.S. Dist. LEXIS 207356, at *10 (C.D. Cal. Dec. 2, 2019) (same).

On February 6, 2018, Raya sent an email to David Barka requesting "summary plan descriptions for both retirement plans as well as complete, whole plan documents for each of Calbiotech's retirement plans." (Ex. O, Barka Decl., ECF No. 36-18 at 2). On February 23, 2018, Raya sent an email to Thereza Lopez stating, "Thank you for . . . providing me the documents describing the Calbiotech Pension Plan. In my letter, I also asked for a copy of the complete plan document in addition to the summary plan description for each of Calbiotech's retirement plans, including the 401K plan. Can you . . . please provide these as well?". (Ex. R, Barka Decl., ECF No. 36-21 at 3). On February 26, 2018, Thereza Lopez wrote to Raya, "Attached is the plan document for the 401(k) Plan." (*Id.* at 2). Lopez attached the Calbiotech, Inc. Volume Submitter Profit Sharing/401(k) Plan Adoption Agreement that Calbiotech adopted on April 3, 2017, and that was retroactively effective on September 1, 2016. (*Id.* at 4-56).

Calbiotech has come forward with evidence that it is "the plan sponsor and designated plan administrator" of "the Calbiotech, Inc. 401(k) Profit Sharing Plan [ ]." (Barka Decl., ECF No. 36-3 ¶ 12). Raya clearly requested that Calbiotech provide Raya with two 401(k) Plan documents on February 6, 2018: the "summary plan description[ ]" and the "whole plan document[ ]." (Ex. O, Barka Decl., ECF No. 36-18 at 2). Raya reiterated this clear request for both documents on February 23, 2018. Calbiotech has come forward with evidence that it provided Raya with the "whole plan document[ ]" within thirty days of Raya's requests. (*Id.*). Thereza Lopez provided Raya with the  Calbiotech, Inc. Volume Submitter Profit Sharing/401(k) Plan Adoption Agreement pursuant to 29 U.S.C. § 1024(b)(4), which requires that the plan administrator provide the "instrument[ ] under which the plan is established or operated" upon a participant or beneficiary's written request. 29 U.S.C. § 1024(b)(4).

However, Calbiotech has not come forward with evidence that it provided Raya with the "summary plan description[ ]" that Raya requested on February 6 and February 23. (Ex. O, Barka Decl., ECF No. 36-18 at 2). After Calbiotech amended the Plan on April 3, 2017, it prepared an updated SDP. Calbiotech attaches this SDP to the Declaration of David Barka as "Exhibit L." (Ex. L, Barka Decl., ECF No. 36-15). Calbiotech has not come forward with evidence that it provided Raya with this SDP. The Calbiotech, Inc. Volume Submitter Profit Sharing/401(k) Plan Adoption Agreement does not provide "the procedures to be followed in presenting claims for benefits under the plan" or "the remedies available under the plan for the redress of claims which are denied" and does not meet the requirements of a summary plan description under 29 U.S.C. § 1022(b). The evidence provided by Calbiotech demonstrates a material issue of fact as to whether Calbiotech provided Raya with the "latest updated summary plan description" within thirty days of Raya's requests for the SPD pursuant to 29 U.S.C. § 1024(b)(4). The Court cannot conclude that Calbiotech is entitled to summary judgment on Raya's ERISA claim based on Raya's February 6, 2018, and February 23, 2018, requests for Plan information.

The Court concludes that Calbiotech is entitled to summary judgment in its favor on Raya's ERISA claim for statutory penalties based on Raya's requests for Plan information on July 26, 2016, August 8, 2016, November 30, 2016, December 7, 2016, and December 13, 2016. Calbiotech is not entitled to summary judgment in its favor on Raya's ERISA claim for statutory penalties based on Raya's requests for Plan information on February 6, 2018, and February 23, 2018.

**D. Declaratory Judgment**

Calbiotech requests that "in the event the Court is not persuaded to grant summary judgment . . . in its favor, it nonetheless issue a declaratory judgment as to Plaintiff's claim against Calbiotech to the effect that Plaintiff would in no event be entitled to an award of statutory penalties under 29 U.S.C. § 1132(c)(1) greater than $12,100.00—substantially less than the $63,800 which Plaintiff seeks by way of his Complaint." (ECF No. 36-1 at 27).

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The declaratory judgment remedy is discretionary with the district judge, not mandatory. *See Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952) ("The Declaratory Judgment Act of 1934 . . . confers a discretion on the courts rather than an absolute right upon the litigant."). The Court declines to exercise its discretion to grant declaratory relief in Calbiotech's favor at this stage in the litigation. Awarding Calbiotech declaratory relief would require the Court to engage in unnecessary redundancy by deciding the same issue of how much recovery Raya is entitled to, if any, that will be decided at trial. Calbiotech's request for declaratory relief is denied.

## V. CALBIOTECH'S BREACH OF CONTRACT COUNTERCLAIM

Calbiotech brings one claim against Raya for breach of contract. Calbiotech alleges that Raya breached the terms of the Separation Agreement by filing his ERISA claim against Calbiotech arising from Calbiotech's alleged actions before December 7, 2016.

Calbiotech asserts that it is entitled to summary judgment in its favor on its breach of contract Counterclaim. Calbiotech contends that in exchange for $12,500, Raya promised that he would not bring any claim against Calbiotech for actions that occurred before December 7, 2016. Calbiotech contends that Raya breached that promise by filing his ERISA action for Calbiotech's alleged failure to provide Plan documents to Raya within thirty days of Raya's requests on July 26, 2016, and August 8, 2016.

The district court has a duty to *sua sponte* consider whether it has subject matter jurisdiction over an action. *See Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1116 (9th Cir. 2004) (citation omitted). Rule 8(a)(1) of the Federal Rules of Civil Procedure requires that "a pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support[.]" Fed. R. Civ. P. 8(a)(1). "A party invoking the

federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996) (citing *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.,* 813 F.2d 1553, 1559 (9th Cir. 1987)).

In this case, Calbiotech brings a Counterclaim against Raya for breach of contract under California state law. Calbiotech seeks relief on its Counterclaim including a $12,500 judgment against Raya. Calbiotech does not include any "statement of the grounds for the court's jurisdiction" in its Counterclaim. *Id.* The Court does not have federal question or diversity jurisdiction over the Counterclaim. *See* 28 U.S.C. §§ 1331, 1332(a). Calbiotech has not demonstrated that the Court has, and should exercise, supplemental jurisdiction over the Counterclaim. *See* 28 U.S.C. § 1367. Calbiotech has not come forward with evidence "proving the actual existence of subject matter jurisdiction" over its claim. *Thompson*, 99 F.3d at 353 (citation omitted). The Court cannot conclude that it has subject matter jurisdiction over Calbiotech's Counterclaim. Calbiotech's Motion for Summary Judgment on the Counterclaim is denied.

## VI.   CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by Defendant/Counterclaimant Calbiotech, Inc. (ECF No. 36), is granted in part and denied in part.

Dated:  May 11, 2020

Hon. William Q. Hayes
United States District Court